UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JUSTIN SAMUELS,                             :
                                            :
                    Plaintiff,              :        23 Civ. 8000 (JPC) (GS)
                                            :
        - against -                         :        REPORT AND
                                            :        <u>RECOMMENDATION</u>
SMALL BUSINESS ASSOCIATION,                 :
                                            :
                    Defendant.              :
-----------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Justin Samuels ("Plaintiff" or "Samuels") brings this *pro se* action against the Small Business Administration ("Defendant" or "SBA") challenging the legality of the SBA's Women-Owned Small Business ("WOSB") Federal Contract program. (Dkt. No. 14). Before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). (Dkt. No. 27–28). For the reasons stated below, the undersigned respectfully recommends that Defendant's Motion to Dismiss be **GRANTED**.

**BACKGROUND**

**A. Plaintiff's Allegations**

Samuels is a Black man who is a dual citizen of Portugal and the United States. (Dkt. No. 2 at 5; Dkt. No. 4 at 2; Dkt. No. 33 at 1). At the time this action was commenced, Samuels resided in Portugal. (Dkt. No. 1 at 1; Dkt. No. 4 at 2). He

now lives in the Bronx, New York.  (Dkt. No. 32).[1]

Samuels alleges that he is a "minority business owner" who registered with the SBA on September 9, 2023, "with the intention of applying for assistance in setting up a small business or obtaining federal contracts through SBA's minority program," otherwise known as the Section 8(a) program.  (Dkt. No. 14 ("SAC") at 1, 4).  SBA's 8(a) program provides various benefits to eligible and certified small businesses that are at least 51% owned and controlled by socially and economically disadvantaged individuals who are U.S. citizens.  *See 8(a) Business Development program*, SBA (last updated July 11, 2025), https://www.sba.gov/federal-contracting/contracting-assistance-programs/8a-business-development-program.

Plaintiff does not allege that he ever actually applied for the 8(a) program. Nor does he identify, by name or otherwise, the business he allegedly owns or provide any description of the nature of the business.  Instead, Plaintiff claims that the Eastern District of Tennessee's holding in *Ultima Servs. Corp. v. U.S. Dep't of Agric.,* 683 F. Supp. 3d 745 (E.D. Tenn. 2023), "ended racial preferences" and that, as a result, "8(a) contracts are effectively nullified for [him] as an applicant."  (SAC at 1–2).[2]

---

[1] Plaintiff has had several address changes during this litigation.  (*See* Dkt. Nos. 9, 11, 20, 32). When filing his complaint and amended complaints, Plaintiff listed his address as being in Barreiro, Portugal.  (Dkt. Nos. 1, 12, 14; *see also* Dkt. Nos. 9, 11).  Thereafter, Plaintiff filed a change of address form with an address in Alabama (Dkt. No. 20), followed by a change in address to the Bronx in January 2025.  (Dkt. No. 32).

[2] As discussed below, the court in *Ultima Services* did not nullify the 8(a) program, but instead invalidated the SBA's use of a "rebuttable presumption of social disadvantage" in administering the program.  *Ultima Servs.*, 683 F. Supp. 3d at 752, 774.  According to the SBA, after the decision was issued on July 19, 2023, the SBA temporarily suspended new applications to the 8(a) program to comply with the court's holding but reopened the 8(a) application portal on September 29, 2023.

Women-owned businesses also qualify for certain programs or contracts under SBA's WOSB Federal Contract program.  (SAC at 2).  Small businesses are eligible for the WOSB program if they meet certain requirements, including that the business be at least 51% owned and controlled by women who are U.S. citizens.  (*Id.* at 5–11 (copy of description of WOSB Federal Contract program on SBA's website)).  Plaintiff alleges that he "sought access to resources offered through the women-only business program" but was "excluded from participating solely because he is a man."  (Dkt. No. 29 at 2).

Samuels asserts that, because he "no longer qualif[ies] for preferences . . . due to [his] race," a program, such as the WOSB program, that provides benefits based on gender and does not benefit Plaintiff is a violation of his rights.  (SAC at 2).  Thus, Plaintiff asserts it is "illegal, unconstitutional, and unfair" that the SBA operates the WOSB Federal Contract program because he is precluded from benefitting from that program based on his gender.  (*Id.*).

Specifically, Plaintiff asserts that the WOSB program violates (1) the Fifth Amendment's Due Process Clause; (2) the Civil Rights Act of 1866; (3) the Equal Protection Clause; and (4) Title VII of the Civil Rights Act of 1964 ("Title VII").[3]

---

(Dkt. No. 28 at 2–3).  The Court does not rely on these assertions by the SBA in ruling on this motion, however.

[3] Plaintiff asserts this claim in a later filing titled "Memorandum of Law in Support of Claim of Illegal Discrimination Under Title VII." (Dkt. No. 29).  "A *pro se* plaintiff may not raise entirely new causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint." *Davila v. Lang,* 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Vlad-Berindan v. MTA N.Y.C. Transit*, 14 Civ. 675, 2014 WL 6982929, at *5–6 (S.D.N.Y. Dec. 10, 2014)) (cleaned up).  The Court will consider Plaintiff's Title VII claim because it appears to be based on the same facts alleged in the SAC.

(SAC at 1–2; Dkt. No. 29).  Plaintiff seeks (1) a declaratory judgment that the WOSB program's requirement that applicants be at least 51% owned by women is "unconstitutional and in violation of federal law;" and (2) injunctive relief enjoining the SBA from enforcing its WOSB program policies to "allow Plaintiff to proceed with the application process without regard to gender-based ownership requirements."  (SAC at 3).

### B. Procedural History

Samuels, proceeding *pro se*, initiated this action on September 10, 2023. (Dkt. No. 1).  By order dated September 20, 2023, the Court permitted Plaintiff to proceed *in forma pauperis* ("IFP"), waiving the prepayment of fees or costs. (Dkt. No. 8).  On March 15, 2024, Plaintiff filed his first amended complaint ("FAC"), which was reviewed by the Honorable Laura T. Swain.  (Dkt. No. 12).

On May 30, 2024, Chief Judge Swain dismissed the FAC for lack of subject matter jurisdiction, but granted Plaintiff leave to replead his claims in a second amended complaint.  (Dkt. No. 13 at 6).  Chief Judge Swain's dismissal stemmed from Plaintiff's lack of Article III standing.  (*Id.* at 4–5).  In her ruling, Chief Judge Swain noted that "[Plaintiff] does not allege that he has ever applied for assistance or funding to the challenged programs and that his application was denied because of his gender.  Rather, Plaintiff's claims appear to be based on a possible injury that he may suffer should he apply to the challenged programs."  (*Id.*).  "Such speculative harm," the decision found, "does not constitute an actual injury sufficient to establish standing."  (*Id.* at 5).  In granting Plaintiff leave to amend, Chief Judge

Swain recommended to Plaintiff that in his amended pleading he "should identify his business, allege facts showing that he suffered injury as a result of the defendant's actions, and indicate that venue[4] for the alleged events giving rise to his claims is appropriate in this court." (*Id* at 6.)

On June 10, 2024, Plaintiff filed the SAC. (Dkt. No. 14). The case was then reassigned to the Honorable John P. Cronan (*see* Dkt. Entry on June 13, 2024), who subsequently referred this action to the undersigned for general pretrial supervision and dispositive motions requiring a Report and Recommendation. (Dkt. No. 17).

In the SAC, Plaintiff attached a PDF of an email from the SBA that he alleges shows "[he] registered for the 8(a) program in September 2023." (SAC at 2, 4). However, all the email shows is that Plaintiff registered with certify.SBA.gov. Neither the exhibit nor any other information in the SAC indicates the name of a business that Plaintiff may own or that Plaintiff applied to the 8(a) program, the WOSB program, or any other SBA program. Despite Chief Judge Swain's directions, the SAC fails to identify Plaintiff's business, allege facts showing he suffered injury from the SBA, or present an argument as to why venue is proper in the Southern District of New York.

On September 30, 2024, Defendant requested a pre-motion conference in anticipation of moving to dismiss Plaintiff's SAC. (Dkt. No. 24). The Court granted the motion, and a conference was held on October 11, 2024, at which Plaintiff failed

---

[4] Chief Judge Swain's decision noted that, although Plaintiff's FAC asserted that venue was proper in this District, Plaintiff did not "provide any facts suggesting that anything related to his pleading occurred in this district." (*Id*. at 6 n.2).

to appear.  (Dkt. Nos. 25–26).  At the conference, the Court set a briefing schedule for Defendant's anticipated motion to dismiss.  (Dkt. No. 26).

On November 12, 2024, the SBA filed its Motion, seeking dismissal of Plaintiff's SAC pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6) (Dkt. No. 27), accompanied by a Memorandum of Law in Support (Dkt. No. 28 ("Mot.")).  Defendant moves to dismiss on several grounds: (1) improper venue (Mot. at 5–6); (2) lack of standing, as Plaintiff "cannot show that he suffered a particularized injury attributable to the SBA" (*id.* at 6–9); (3) mootness by virtue of the SBA's continuation of the 8(a) program (*id.* at 9–10); and (4) failure to state a claim, as Plaintiff failed to address the applicable standard for gender-based discrimination (*id.* at 10–11).[5]

On November 17, 2025, Plaintiff filed a "Memorandum of Law in Support of Claim of Illegal Discrimination Under Title VII."  (Dkt. No. 29).  In response, the Court issued an Order stating that it was "unclear whether Plaintiff intended this filing to be his opposition" brief, and reminding Plaintiff that he had until December 12, 2024, to file his opposition.  (Dkt. No. 30).  The Court further informed Plaintiff that this filing did not address the defects identified in Defendant's Motion and that the Court would "consider any additional papers filed" by the deadline.  (*Id.*).  Plaintiff failed to file any additional papers by the deadline, and on January 2,

---

[5] Plaintiff argues that the applicable standard of review for gender-based discrimination is strict scrutiny.  (Dkt. No. 36).  However, as the SBA notes, "courts apply strict scrutiny for classifications based on race" and "intermediate scrutiny for classifications based on sex."  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,* 600 U.S. 181, 308–09 (2023) (Gorsuch, J., concurring).  (*See* Mot. at 11; Dkt. No. 35).

2025, Defendant filed its Reply. (Dkt. No. 31 ("Reply" or "Rep.")).

Subsequently, Plaintiff filed two untimely responses to Defendant's motion: (1) a "Memorandum of Law in Support of Equal Protection Challenge" on January 8, 2025 (Dkt. No. 33); and (2) "Plaintiff's Opposition to Defendant's Motion to Dismiss" on January 28, 2025 (Dkt. No. 36). While reasserting Plaintiff's claims of discrimination, neither filing addresses the SBA's grounds for dismissal, namely, standing, venue, mootness, and the level of scrutiny applied to gender-based claims.[6]

## LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1. Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) requires a claim be dismissed for lack of subject matter jurisdiction 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Riordan v. NEC, Am. Fed'n of Gov't Emps., AFL-CIO*, No. 23 Civ. 881 (JPO), 2024 WL 1313614, at *1 (S.D.N.Y. Mar. 26, 2024) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *see* Fed. R. Civ. P. 12(b)(1). "A 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *S.G. v. Success Acad. Charter Sch., Inc.*, No. 18 Civ. 2484 (KPF), 2019 WL 1284280, at *7 (S.D.N.Y. Mar. 20, 2019) (quoting *Makarova*, 201 F.3d at 113). "Where subject matter jurisdiction is

---

[6] The SBA submitted a brief response to Plaintiff's January 8 submission, noting that Plaintiff's submission still "does not address the grounds for dismissal set out in the Government's motion." (Dkt. No. 3).

contested, a district court may consider evidence outside the pleadings, such as affidavits and exhibits." *Id.* (citing *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

In considering a motion to dismiss under Rule 12(b)(1) where the plaintiff is proceeding *pro se*, "the allegations of [the] Complaint must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Germosen-Vasquez v. Cohen, Frankel & Ruggiero, LLP*, No. 21 Civ. 07487 (AT) (SDA), 2022 WL 2612402, at *2 (S.D.N.Y. Mar. 10, 2022) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)), *R&R adopted,* 2022 WL 2236347 (S.D.N.Y. June 22, 2022). "However, '*pro se* litigants still must establish subject matter jurisdiction to proceed in federal court.'" *Hall v. N.Y.C. Water Bd.*, No. 24 Civ. 02483 (JPC) (GWG), 2024 WL 4487257, at *3 (S.D.N.Y. Oct. 15, 2024) (quoting *Harrison v. New York*, 95 F. Supp. 3d 293, 311 (E.D.N.Y. 2015)), *R&R adopted,* 2024 WL 4712425 (S.D.N.Y. Nov. 7, 2024).

### 2. Article III Standing

"Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of 'cases' and 'controversies.'" *Maddy v. Life Time, Inc.*, No. 22 Civ. 5007 (LJL), 2023 WL 4364488, at *3 (S.D.N.Y. July 5, 2023) (citation omitted). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423 (2021) (citing *Raines v. Byrd,* 521 U.S. 811, 819 (1997)). Standing is "'the threshold question in every federal case, determining the power of

the court to entertain the suit.'" *Life Time, Inc.*, 2023 WL 4364488, at *3 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)).  In the Second Circuit, standing challenges are properly brought on a Rule 12(b)(1) motion to dismiss.  *See All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006).

There are three elements required for a plaintiff to have standing.  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* Where a case is at the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

To satisfy the "injury in fact" requirement, the plaintiff must show his injury is "both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (quoting *Lujan,* 504 U.S. at 560).  "[I]n evaluating whether the alleged injury is concrete and particularized, we assess whether the injury affects the plaintiff in a personal and individual way, to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances . . . ." *Baur v. Veneman,* 352 F.3d 625, 632 (2d Cir.

9

2003) (cleaned up).

## B. Motion to Dismiss for Improper Venue

In ruling on a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), "the Court accepts as true all factual allegations in the non-moving party's pleadings and draws all reasonable inferences in that party's favor." *Stonegardens Advisory LLC v. DeepMedia.AI*, No. 24 Civ. 2178 (AE), 2024 WL 5047628, at *8 (S.D.N.Y. Dec. 9, 2024). The Court may, however, also "consider materials outside the pleadings." *Id.* When a defendant challenges venue, the plaintiff "'bears the burden of demonstrating that [its] chosen venue is proper.'" *Id.* (quoting *Vann v. Fischer*, No. 11 Civ. 1958 (JPO), 2012 WL 2384428, at *4 (S.D.N.Y. June 21, 2012)). To meet that burden, the plaintiff "must plead facts sufficient for a prima facie showing" of venue. *Palmore v. Napoli Shkolnik PLLC*, No. 23 Civ. 1616 (ER), 2024 WL 1330003, at *6 (S.D.N.Y. Mar. 28, 2024).

"Whether venue is 'improper' for the purpose of Rule 12(b)(3) is governed by 28 U.S.C. § 1391." *Sadiant, Inc. v. Penstock Consulting, LLC*, No. 23 Civ. 7872 (KPF), 2024 WL 2847195, at *11 (S.D.N.Y. May 30, 2024) (citation omitted). Venue in suits against, *inter alia*, "an agency of the United States" is governed by 28 U.S.C. § 1391(e)(1). Under that statute, venue is proper in "any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." *Id.*; *see, e.g.*, *Williams v. MDC Brooklyn/fbop*, No. 24 Civ.

7849 (LTS), 2024 WL 4742632, at *1 (S.D.N.Y. Oct. 17, 2024).

## DISCUSSION

"A district court must consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal." *Rich v. New York*, No. 21 Civ. 2835 (AT), 2022 WL 992885, at *3 (S.D.N.Y. Mar. 31, 2022). The SBA's motion to dismiss for lack of standing under Rule 12(b)(1) implicates the Court's subject matter jurisdiction. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("'If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.'") (citation omitted). Accordingly, the Court first addresses the issue of standing. *See, e.g.*, *All. for Env't Renewal*, 436 F.3d at 87 ("Article III standing must be decided before the merits."); *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.") (cleaned up); *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 266 (S.D.N.Y. 2014) ("Because it is jurisdictional, the Court first considers defendants' argument that plaintiffs lack standing.").

### A. Standing

In order to establish standing to maintain this action, Plaintiff must adequately allege that he has suffered an injury in fact that is fairly traceable to Defendant's alleged misconduct. He has failed to do so.

11

Plaintiff claims the SBA is engaged in discriminatory practices, yet he does not allege any facts suggesting that he has suffered any "concrete and particularized" injury from those practices. *See Brown,* 600 U.S. at 561. For an injury to be "'concrete,'" it "must be 'de facto'; that is, it must actually exist." *Spokeo,* 578 U.S. at 340 (citation omitted). Despite being given multiple opportunities to explain how the SBA's practices injured him personally, Plaintiff has not alleged that he has ever applied for SBA assistance or funding, or for any federal contracts, nor has he alleged that he was denied assistance or a contract award on account of his gender or his race. To the contrary, Plaintiff alleges only that he registered with the SBA "*with the intention of applying* for assistance," not that he actually applied for anything through the SBA. (SAC at 1 (emphasis added)).

"Ordinarily, to establish standing to challenge an allegedly discriminatory program, a plaintiff must apply to that program." *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 118 (2d Cir. 2025) (citing *Jackson-Bey v. Hanslmaier,* 115 F.3d 1091, 1096 (2d Cir. 1997)). As the Second Circuit explained in *Jackson-Bey,* the Supreme Court has denied standing where a plaintiff sought to challenge a discriminatory policy but failed to apply for the benefit that the policy allegedly deprived the plaintiff of. *Jackson-Bey,* 115 F.3d at 1096 (citing *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 167–68 (1972) (Black plaintiff who never actually applied for membership in the Moose Lodge lacked standing to challenge the club's all white membership requirement); and *Allen v. Wright,* 468 U.S. 737, 755–56 (1982) (parents of children

who had never applied for admission to private schools with allegedly racially discriminatory admissions policies lacked standing to challenge schools' tax-exempt status)); *see also Doe v. Blum,* 729 F.2d 186, 189–90 (2d Cir. 1984) (plaintiffs lacked standing to challenge state's failure to provide family planning services where plaintiffs never applied for and therefore were never denied these services).

This rule applies here, as the SBA correctly argues.  (*See* Mot. at 6–8.)  At most, Plaintiff has alleged a *hypothetical* harm: that *if* he applied for SBA assistance, he would be denied on account of his gender and his race.  But such a "conjectural or hypothetical" harm, *Brown*, 600 U.S. at 561, does not confer standing.  *See, e.g.*, *Dowdy v. N.Y.C. Dep't of Sanitation*, No. 22 Civ. 6284 (ALC), 2023 WL 6258536, at *5 (S.D.N.Y. Sept. 26, 2023) (plaintiffs lacked standing to challenge allegedly discriminatory hiring requirements where they did not adequately allege that they "actually submitted to the challenged policy and submitted applications to become either Sanitation Police Officers or Sanitation Workers"); *Marotte v. City of New York*, No. 16 Civ. 8953 (GHW) (OTW), 2019 WL 1533304, at *7 (S.D.N.Y. Feb. 7, 2019) (plaintiff who failed to submit a bid lacked standing to claim that the bidding process was unlawful; "Plaintiff has not shown any injury beyond an inability to, some day in the future, install PPTs on the City's sidewalks under the current regulatory scheme—an abstract, hypothetical injury that is not particularized to him"), *R&R adopted*, 2019 WL 1033798 (S.D.N.Y. Mar. 5, 2019).

Indeed, in the past year, Samuels has had three similar claims dismissed in this District for this same reason. Most recently, the Honorable John G. Koeltl dismissed a complaint brought by Samuels against Cornell Tech and the City University of New York. *Samuels v. Cornell Tech.*, No. 24 Civ. 1946 (JGK), 2025 WL 753955, at *1 (S.D.N.Y. Mar. 10, 2025). The suit claimed that the schools participated in "Break Through Tech Programs" that discriminated on the basis of sex, sexual orientation, and gender identity. *Id.* at *1. But Samuels "d[id] not allege that he ever applied to any program offered by Cornell or CUNY." *Id.* at *2. Accordingly, Judge Koeltl found that Samuels "failed to demonstrate Article III standing to sue CUNY and Cornell." *Id.* at *3; *see also Samuels v. Barnard Coll.*, No. 23 Civ. 6181 (PAE) (SLC), 2024 WL 5718124, at *7 (S.D.N.Y. Oct. 3, 2024) (holding that, "[b]ecause Mr. Samuels does not allege that he applied or attempted to apply to Barnard's undergraduate program, he lacks standing to" challenge Barnard's admissions policy limiting admissions to women and male-to-female transgender applicants); *R&R adopted*, 2025 WL 27683 (S.D.N.Y. Jan. 3, 2025); *Samuels v. New York City*, No. 23 Civ. 10045 (AS), 2024 WL 3742544, at *2 (S.D.N.Y. Aug. 9, 2024) (dismissing action by Samuels alleging that the City's Women's Film Fund discriminates against men because Samuels "does not allege that Samuels applied for a grant from the Women's Film Fund"); *Samuels v. NYC Women's Film Fund*, No. 23 Civ. 10045 (AS), 2025 WL 27687, at *2 (S.D.N.Y. Jan. 3, 2025) (dismissing Samuels' amended complaint in same action for same reason).

14

It is true that this "threshold requirement for standing" may be excused "where a plaintiff makes a substantial showing that application . . . would have been futile." *Jackson-Bey*, 115 F.3d at 1096; *see also Do No Harm*, 126 F.4th at 118 ("[A] plaintiff need not go through the motions of formally applying when that would be a 'futile gesture.'") (quoting *Int'l. Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977)). "However, an unsupported claim of futility is not enough to excuse a plaintiff's failure to apply." *Jackson-Bey*, 115 F.3d at 1096. Here, Samuels makes no claim of futility. Allowing every possible favorable intendment to his allegations given his *pro se* status, the Court assumes it would have been futile for Samuels, a male, to apply to the WOSB program, which is restricted to businesses majority-owned by women. However, Samuels' claim in this case is not that the WOSB program, on its own, impermissibly discriminates against him, but that the program is unconstitutional when considered in combination with Samuels' assertion that he "no longer qualif[ies] for [SBA] preferences" under the 8(a) program "due to [his] race." (SAC at 2).

That assertion, however, is based on a misreading of the Eastern District of Tennessee's decision in *Ultima Services*. Contrary to Samuels' claim, *Ultima Services* did not nullify SBA's 8(a) program. Rather, the court required that the program be modified to eliminate use of the SBA's "rebuttable presumption of social disadvantage" in favor of certain minority groups, finding that the presumption violated the plaintiff's right to equal protection under the Fifth Amendment. *Ultima Servs.*, 683 F. Supp. 3d at 752, 774. Samuels has not alleged, or pled facts

15

suggesting, that (assuming he met the program's other eligibility requirements) he would be unable to obtain assistance through the 8(a) program. Hence, even assuming that Samuels is asserting futility, that assertion is entirely "unsupported," *Jackson-Bey*, 115 F.3d at 1096, and does not enable Samuels to circumvent the application requirement.

Moreover, Plaintiff has not even properly alleged that he owns an operating U.S. business, a prerequisite for SBA assistance under both the 8(a) and WOSB programs. (*See* Mot. at 8 (citing 13 C.F.R. § 121.105(a)(1)). Although the SAC contains the conclusory allegation that Plaintiff is "a minority business owner" (SAC at 1), Plaintiff alleges no facts to support this allegation, not even the name of the business that he purportedly owns. Notably, in his FAC, Plaintiff alleged only that he is the "owner of [Your Business Type], located at [Your Business Address]." (FAC at 2) (brackets in original)). This general claim without so much as a business name is insufficient for the Court to find that Plaintiff has sufficiently alleged that he operates any sort of business.

"Applicants who fail to meet the basic eligibility requirements . . . cannot demonstrate that they suffered a 'particularized' personal injury[.]" *Houser v. Pritzker*, 28 F. Supp. 3d 222, 237 (S.D.N.Y. 2014). As Plaintiff has not alleged that he meets the bare minimum qualifications for SBA assistance, this is another reason why he has failed to plead an injury in fact traceable to the SBA's alleged discriminatory policies. Judge Koeltl found that Samuels lacked standing in his suit against Cornell and CUNY for this reason as well. *Samuels*, 2025 WL 753955,

16

at *3 ("The programs offered by CUNY and Cornell in partnership with Break Through Tech are available only to college students. However, the plaintiff does not allege that he was a college student when this action was brought[.]") (citations omitted); *see also Dowdy*, 2023 WL 6258536, at *6 ("[A]t a minimum, Plaintiffs would have to allege that they meet the qualifications to become Sanitation Police Officers but for the alleged artificial barriers to entry.").

Plaintiff's failure to identify his business also cuts against the element of redressability. "To satisfy the redressability element of Article III standing, a plaintiff must show that it is likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision." *Soule v. Conn. Ass'n of Schs., Inc.,* 90 F.4th 34, 47 (2d Cir. 2023) (cleaned up). As the SBA points out in its Reply (Rep. at 4), Plaintiff represented in his application to proceed *in forma pauperis* that he supports himself through public assistance from the Portuguese government. (Dkt. Nos. 4, 7, 8, 10). Plaintiff's IFP application, which was granted, states that he did not receive income from any "business, profession, or other self-employment." (Dkt. No. 4).

To be sure, not all businesses generate profit, but it is difficult to see how Plaintiff would be able to qualify for SBA assistance under the 8(a) program with the representations he made in his IFP application. The SBA requires that "the applicant concern must show that it has operated and received contracts . . . in its primary industry classification for at least two full years immediately prior to the date of its 8(a) BD application[.]" 13 C.F.R. § 124.107. Even assuming Plaintiff has

a business, if that business is ineligible for the SBA's 8(a) program in the first place, a ruling that the WOSB program is unconstitutional would not provide Plaintiff with redress.

As noted above, Chief Judge Swain dismissed Plaintiff's FAC on the same grounds discussed herein: his failure to allege that he applied for SBA assistance or to identify his business. (Dkt. No. 13 at 4–5). Yet in the SAC and his submissions on this motion, Plaintiff consistently asserts the SBA's WOSB program is unconstitutional without addressing the pleading deficiencies noted in Chief Judge Swain's ruling or in Defendant's Motion. (*See* SAC; Dkt. Nos. 29, 33, 36). Each submission indicates Plaintiff's concern is less "personal and individual" and more to "vent[] [his] public grievances." *Veneman,* 352 F.3d at 632.

For example, in his January 8, 2025 filing, under Plaintiff's "Request for Judicial Relief" section, he states no relief that would cure an individual injury. He simply requests "that this Court review programs that provide benefits exclusively based on sex and/or race to determine whether they meet the constitutional standard of strict scrutiny." (Dkt. No. 33 at 2). The Supreme Court has "repeatedly held that such a 'generalized grievance,' no matter how sincere, is insufficient to confer standing." *Hollingsworth v. Perry,* 570 U.S. 693, 706 (2013); *see also Samuels,* 2025 WL 753955, at *3 (finding that Samuels' assertions "suggest an abstract, generalized grievance, not an actual desire to apply to the programs offered by CUNY and Cornell") (cleaned up); *Samuels,* 2024 WL 5718124, at *7

(agreeing with Barnard that Samuels' challenge to its admissions policy "is a 'generalized grievance' not predicated on any tangible harm to Mr. Samuels").

Furthermore, by failing to address issues of standing, Plaintiff essentially concedes this point. *See Ramirez v. Temin & Co., Inc.,* No. 20 Civ. 6258 (ER), 2021 WL 4392303, at *9 n.2 (S.D.N.Y. Sept. 24, 2021) ("Numerous courts have held that a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument.").

*Pro se* plaintiffs are given more leeway than parties represented by counsel, but Plaintiff provides no basis for concluding that he has met his burden of establishing each (or indeed any) of the elements of standing. "[W]hile the Court is 'obligated to draw the most favorable inferences' that the complaint supports, it 'cannot invent factual allegations that [the plaintiff] has not pled.'" *Barkai v. Mendez,* 629 F. Supp. 3d 166, 186 (S.D.N.Y. 2022) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). This Court cannot assume Plaintiff owns a business and has applied for SBA assistance without some factual allegations indicating those facts are true. Without those allegations, Plaintiff lacks standing and thus this Court lacks subject matter jurisdiction.

## B. Venue

Because subject matter jurisdiction is lacking due to Samuels' failure to plead standing, the Court refrains from addressing the SBA's argument that Samuels has failed to state a claim, as well as its mootness argument. *See Rhulen Agency,* 896 F.2d at 678. However, the Court will address the SBA's venue argument because it

is an additional reason why it would be futile for Samuels to seek leave to replead
his case in this Court.

As noted above, venue would lie in the Southern District of New York for this
action only if: (A) the SBA "resides" in this District; (B) a "substantial part of the
events or omissions giving rise to" Samuels' claims occurred in this District; or (C)
Samuels resides in this District. *See* 28 U.S.C. § 1391(e)(1). Samuels has failed to
allege that any of these three bases for venue exists.

First, the SBA is headquartered in Washington, DC (Mot. at 5) and, even
though it has an office in this District (*id.*), "a federal agency does not reside in a
district merely by virtue of having an office in that district." *Caremark Therapeutic
Servs. v. Leavitt*, 405 F. Supp. 2d 454, 463 (S.D.N.Y. 2005); *accord, e.g.*, *New York v.
Pruitt*, No. 18 Civ. 1030 (JPO), 2018 WL 2411595, at *3 (S.D.N.Y. 2018) ("For venue
purposes, a federal agency resides where it is headquartered—usually Washington,
D.C. It is not enough that an agency has offices in [the district in question].");
*Schwarz v. IRS*, 998 F. Supp. 201, 202–03 (N.D.N.Y. 1998) ("Venue is not proper
merely because a federal agency maintains a regional office in a district."); *see also,
e.g.*, *Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 267 (7th Cir. 1978); *Trujillo v.
Garland*, No. 22-CV-23980, 2023 WL 2374445, at *6 (S.D. Fla. Mar. 6, 2023);
*Jackson v. Fed. Bur. of Prisons*, No. 4:19-cv-287, 2019 WL 8752339, at *5 (M.D. Pa.
Dec. 9, 2019), *R&R adopted*, 2020 WL 1243198 (M.D. Pa. Mar. 16, 2020); *Garcia v.
Acosta*, 393 F. Supp. 3d 93, 108 (D.D.C. 2019); 14D Wright & Miller, *Fed. Prac. &
Proc.* § 3815, at 334 (4th ed. 2013) (noting that the courts "have rejected arguments

that an agency resides wherever it has a regional office"); 17 *Moore's Fed. Prac.* § 110.31 (3d ed. 2018) ("For purposes of [Section 1391(e)(1)], a federal agency sued in its own name is considered to be a resident of the District of Columbia only."). Hence, venue is not proper under Section 1391(e)(1)(A).

Second, Samuels does not allege that any part, let alone a substantial part, of the events giving rise to his claims occurred in this District. *See, e.g.*, *Noveda v. U.S.P.S.*, No. 23 Civ. 6041 (LTS), 2023 WL 5152694, at *2 (S.D.N.Y. July 18, 2023) (noting that because "the events giving rise to [plaintiff's] claims took place outside this district," venue "does not lie in this district under Section 1391(e)(B)"); *Pruitt*, 2018 WL 2411595, at *3 (finding that venue would not be proper in the Southern District of Texas in suit against EPA because "[t]he events leading to these suits did not occur in Texas"). Hence, venue is not proper under Section 1391(e)(1)(B).

Third, at the time this action was filed, Samuels did not reside in this District. Rather, he resided in Portugal. (Dkt. No. 1 at 1; Dkt. No. 4 at 2). Although Samuels has since moved to the Bronx, that fact is immaterial, as "[f]or venue purposes, the relevant facts are those as they existed at the time of the filing of the complaint." *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.,* No. 84 Civ. 1411 (CSH), 1988 WL 140821, at *1 (S.D.N.Y. Dec. 22, 1988); *see also Goldberg v. United States*, No. 13 Civ. 7353 (JS) (AYS), 2015 WL 5638008, at *3 (E.D.N.Y. June 4, 2015) ("When determining whether venue is proper, the relevant district to consider is plaintiff's residence as of the time of the filing of the complaint."); *McVaslin v. Massachusetts*, No. 2:23-cv-375-JAW, 2023 WL 6534359, at *2 (D. Me. Oct. 6, 2023)

21

(fact that plaintiff moved into forum district after suit was filed "does not change the venue analysis" because venue 'is determined based upon the parties and the allegations at the time the operative complaint is filed, not subsequent events'" (quoting *Keitt v. New York City*, 882 F. Supp. 2d 412, 459 n.44 (S.D.N.Y. 2011))). Hence, venue is not proper under Section 1391(e)(1)(C) either.

Thus, this case did not belong in this District to begin with.  While courts have discretion to transfer an improperly venued action to a district where venue would be proper, a transfer in this case would, as the SBA points out, be inappropriate given Samuels' failure to allege Article III standing, which would deprive any federal court of exercising jurisdiction over his claims.  (Mot. at 6).  *See* 28 U.S.C. § 1406(a) (authorizing district court to transfer improperly venued action to another district in which it could have been brought if such transfer is "in the interest of justice"); *Luctama v. Knickerbocker*, No. 19 Civ. 8717 (VB), 2020 WL 1503563, at *4–5 (S.D.N.Y. Mar. 30, 2020) (concluding that transfer was not in the interest of justice where plaintiffs were unable to state an actionable claim).

### C.  Leave to Amend

Although courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (cleaned up), the undersigned does not believe that leave to amend should be granted here, for several reasons.

First, even a liberal reading of Plaintiff's allegations gives no indication that Plaintiff may be able to plead a viable claim; rather, it appears that the problems with Plaintiff's claims are "substantive . . . [and] better pleading will not cure [them]." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Plaintiff can claim no injury entitling him to Article III standing. Better pleading will not resolve this defect. *See Obal v. Deutsche Bank Nat'l. Trust Co.*, No. 14 Civ. 2463, 2015 WL 631404, at *10 (S.D.N.Y. Feb. 13, 2015) ("Additional pleading will not cure the lack of standing and injury. . . . Despite his *pro se* status, further leave to amend is denied."), *aff'd*, 670 F. App'x 10 (2d Cir. 2016). Similarly, there is no reason to believe that an amended complaint could establish that venue is proper in the Southern District of New York.

Second, Plaintiff "has already amended his pleading twice." *Simmons v. Mason*, No. 17 Civ. 8886 (PMH), 2021 WL 1164573, at *4 (S.D.N.Y. Mar. 26, 2021); *see also Barsella v. United States,* 135 F.R.D. 64, 66 (S.D.N.Y. 1991) ("[I]t would be especially inappropriate to sustain this amended complaint or to grant the plaintiff leave to amend the complaint since the Court reviewed the first complaint and personally advised the plaintiff of its deficiencies [] and it is evident that plaintiff has failed to correct any of those deficiencies in the amended complaint."). As noted above, Plaintiff continuously neglects key pleading issues in his complaints and briefs despite clear direction from this Court. If Plaintiff has been unable to resolve these issues to date, it is unlikely he will be able to do so in a third complaint.

Finally, Plaintiff has not asked for leave to amend and has not "given any indication that he is in possession of facts that would cure the problems" identified in the SAC. *Reynolds v. City of Mt. Vernon*, No. 14 Civ. 1481 (JMF), 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (cleaned up). This Court would be more amenable to grant leave to replead if Plaintiff's complaints and briefs showed signs of improvement by way of responding to requested information. As it stands, his submissions have become repetitive and circular, without alleging sufficient facts. (*See generally* Dkt. Nos. 1, 12, 14, 29, 33, 36). "Where it appears that granting leave to amend is unlikely to be productive [] it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Such is the case here.

Accordingly, the undersigned respectfully recommends that the SAC be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendant's motion to dismiss be **GRANTED**.


DATED:      New York, New York
            July 24, 2025

                                        _____
                                        GARY STEIN
                                        United States Magistrate Judge

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS**
**TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from the date of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to the Honorable John P. Cronan. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner v. Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

25